**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| PATRICK O. WILLIAMS-TOLBERT, | Case No. 26-CV-2442 (KMM/SGE) |
| Plaintiff, | |
| v. | **ORDER** |
| LAINE HOMECARE LLC and CHANEL SHELL, | |
| Defendants. | |

This matter is before the Court on Plaintiff Patrick O. Williams-Tolbert's Employment Discrimination Complaint, ECF No. 1 ("Complaint"), and Application to Proceed *In Forma Pauperis*, ECF No. 2 ("IFP Application"). For the following reasons, the Court dismisses a portion of this action, grants the IFP Application, and takes service-initiating steps for the rest of this matter.

## I.    BACKGROUND

### A.    The Parties

Mr. Williams-Tolbert, who is proceeding *pro se* in this case, resides in Brooklyn Park, Minnesota. *See* Compl. 1.[1]    He identifies Defendant Laine Homecare LLC ("Laine Homecare") as a corporate entity and personal-care-assistance agency operating out of Brooklyn Center, Minnesota. *See id.* at 2. The Complaint also names Chanel Shell as a Defendant;

---

[1] Citations to the Complaint use the page numbers provided by the District's CM/ECF electronic-filing system.

based on the allegations in the Complaint, Ms. Shell apparently holds a supervisory or managerial role with Laine Homecare LLC. *See, e.g.*, *id.* at 7.[2]

### B.    Chronology of Allegations

The Complaint is somewhat hard to follow; in particular, most of its factual allegations are presented in a three-page single-spaced statement without paragraph breaks. *See id.* at 7–9. The dispute appears to arise from Laine Homecare's hiring of Mr. Williams-Tolbert to serve as a personal care assistant for a single client: Tashawn Williams, his mother. *See id.* at 7–8. Mr. Williams-Tolbert alleges that Ms. Williams suffers from numerous disabilities that cause severe physical limitations. *See id.* at 9. Exhibits provided with the Complaint show that Ms. Williams receives Social Security disability benefits and is in Minnesota's "Safe at Home" address-confidentiality program, apparently because of past experiences with a "stalker." *See, e.g.*, *id.* at 8; ECF No. 1-1 at 3–4, 62–63.

Mr. Williams-Tolbert alleges that he began working with Laine Homecare on November 6, 2025, providing services to Ms. Williams, and that he held a previous caregiver certification from 2021. *See* Compl. 7. He alleges that he worked continuously for Laine Homecare until at least mid-January 2026. *See id.*; *but cf. id.* (suggesting that Mr. Williams-Tolbert may have worked through January 28, 2026). He claims that Defendants refused to pay Mr. Williams-Tolbert despite this work. *See id.* at 7–8.

---

[2] The Complaint refers several times to a "Mr. Shell," identified as Ms. Shell's husband. But the case caption and enumerated party list do not formally name Mr. Shell as a Defendant. *See* Compl. 1–2. The Court therefore does not consider potential claims against him, treating his alleged actions only as factual context as to the named Defendants.

As the Court understands it, Mr. Williams-Tolbert believes that Ms. Shell tried to justify withholding his wages under a pretext of regulatory "compliance." *Id.* at 7. He also asserts that Ms. Shell communicated entirely through Ms. Williams during the onboarding process, rather than communicating directly with Mr. Williams-Tolbert (i.e., her employee). *See id.* He also claims that Ms. Shell failed to properly send him a mandatory testing link required for onboarding. *See id.* Mr. Williams-Tolbert alleges he completed the required performance test and training immediately when the link arrived. *See id.* He asserts that Ms. Shell nevertheless determined that he was out of compliance, characterizing his employment status as invalid for the purposes of payroll processing. *See id.*; *see also* ECF No. 1-1 at 68.

The Complaint further seems to assert that Ms. Shell explicitly told Mr. Williams-Tolbert to backdate his timecards, and that Laine Homecare intentionally did not bill the state agency for the hours that Mr. Williams-Tolbert actually worked (thereby ensuring no revenue would be generated to fund his pay). *See* Compl. 7–8. Mr. Williams-Tolbert also alleges that he was initially told his pay would be $17.00 per hour, but was later told he would not receive his checks because of a "cola holding up due process," a justification he allegedly discovered was factually false and unrelated to providing care services. *See id.* at 7.

Mr. Williams-Tolbert suggests that the real motivation behind Defendants' actions was discriminatory animus because of his association with his disabled mother and his status as a familial caregiver. *See id.* He claims that Ms. Shell had a personal conflict with Ms. Williams. During a phone call, Ms. Shell allegedly told Ms. Williams that Ms. Williams "had a lot of hate going on," an assertion that the Complaint suggests shows personal bias. *Id.* The Complaint also alleges that Ms. Shell and her husband actively discussed and disclosed confidential

information about Ms. Williams's medical and criminal background to unauthorized third par-ties.  *See id.* at 8.  Mr. Williams-Tolbert asserts that Ms. Shell and her husband engaged in malicious gossip, telling mutual acquaintances that he was not actually providing caregiving services and that Ms. Williams was "faking" her injuries.  *Id.*

Mr. Williams-Tolbert alleges that his employment ended abruptly.  He states that on January 13, 2026, Ms. Shell directly told Ms. Williams that she needed to "find another agency," effectively terminating Ms. Williams as a Laine Homecare client.  *Id.* at 7.  Because Ms. Wil-liams was Mr. Williams-Tolbert's only client, this action functionally terminated his employ-ment.  *See id.* at 7–8.  Mr. Williams-Tolbert claims that his mother's state-approved care plan permitted her to stay with Laine Homecare through January 28, 2026, but the January 13 events kept him from continuing his work and from requesting his last paycheck.  *See id.* at 7.  Around March 2026, long after this termination, Laine Homecare allegedly deposited about $300 into Mr. Williams-Tolbert's bank account.  He claims this reflects an unlawful underpay-ment for his earlier work.  *See id.* at 7–8; *see also* ECF No. 1-1 at 23.

After this alleged termination, Mr. Williams-Tolbert asserts that he demanded his un-paid wages and later filed formal administrative complaints.  He filed a wage claim with the Minnesota Department of Labor and Industry ("MDLI"); this led to a letter dated March 18, 2026, indicating that MDLI was "closing [his] wage claim" and advising him of his right to pursue the dispute in court.  ECF No. 1-1 at 2.  He also filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a "Determina-tion and Notice of Rights" letter to Mr. Williams-Tolbert on April 8, 2026, closing its file and

authorizing him to file suit. *See id.* at 1. The Clerk of Court entered Mr. Williams-Tolbert's opening filings on May 1, 2026. *See* Docket.

### C.    Causes of Action and Relief Sought

The Complaint does not list counts or causes of action. Mr. Williams-Tolbert does state that he bases this action on the Americans with Disabilities Act of 1990;[3] when asked "the conduct complained of" in the suit, he checks boxes for "[r]etaliation" and for "[o]ther conduct." Compl. 3–4. The listed "other conduct" is "wage theft, familial status discrimination, [and] unfair treatment." *Id.* at 4.

Construing the *pro se* Complaint liberally, the Court infers that Mr. Williams-Tolbert may be trying to assert the following seven claims (or sorts of claims):

1. An ADA claim against Laine Homecare for associational-disability discrimination, asserting that it took certain adverse employment actions because of Mr. Williams-Tolbert's association with a disabled person (his mother).

2. An ADA claim against Ms. Shell for associational-disability discrimination, asserting that Ms. Shell personally withheld Mr. Williams-Tolbert's wages, and terminated him, because of his familial association with Ms. Williams.

3. A claim under the Fair Labor Standards Act of 1938[4] against both Defendants, alleging that they violated federal wage laws by refusing to fully pay Mr. Williams-Tolbert for his caregiving work.

4. A parallel state-law wage claim under Minn. Stat. § 181.101.

5. A claim under the Minnesota Human Rights Act ("MHRA")[5] against Laine Homecare for "familial status" discrimination, asserting that Laine Homecare unlawfully devalued Mr. Williams-Tolbert's work, withheld

---

[3] 42 U.S.C. §§ 12101–12213.

[4] 29 U.S.C. §§ 201–219.

[5] Minn. Stat. §§ 363A.01–.44 (2025).

his wages, and eventually terminated his employment because of his status as a familial caregiver to his mother.

6. An MHRA claim against Ms. Shell, claiming that she assisted Laine Homecare's discriminatory actions by personally imposing pretextual compliance hurdles, asking for the backdating of timecards, and intentionally refusing to bill the State of Minnesota for Mr. Williams-Tolbert's hours.

7. Retaliation claims under various statutes (e.g., the ADA, FLSA, and MHRA), asserting that Defendants took retaliatory actions in response to disputes over Mr. Williams-Tolbert's unpaid wages and compliance with onboarding requirements.

While Mr. Williams-Tolbert's request for relief is unclear, the Court presumes that he seeks to recover his unpaid wages, as well as compensatory damages.

## II.    ANALYSIS

### A.    Standard of Review

Instead of paying this action's filing fee, Mr. Williams-Tolbert submitted an IFP Application.  Based on his financial situation, he appears to qualify for *in forma pauperis* ("IFP") status.  But the federal statute governing IFP proceedings provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [an IFP matter] at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ."  28 U.S.C. § 1915(e)(2).

To determine whether a complaint states a claim on which relief may be granted, a district court accepts its factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  *See Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 836 (8th Cir. 2014) (citing *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014)).  The allegations need not be detailed, but they must "raise a right to relief above the speculative level[.]"

6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must also "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This inquiry is "context-specific" and depends on the court's "judicial experience and common sense." *Id.* at 679; *see also Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc). *Pro se* complaints, like Mr. Williams-Tolbert's, are to be construed liberally, but even so, they must allege enough facts to support cognizable claims. *Sandknop v. Mo. Dep't of Corrs.*, 932 F.3d 739, 741–42 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

### B. Claim (2)

While most of this case can proceed, the Court dismisses one of the claims listed above: Claim (2), the potential ADA claim against Ms. Shell personally based on alleged associational-disability discrimination.

Mr. Williams-Tolbert's ADA claim falls under Title I of the ADA. In *Garrison v. Department of Revenue State of Minnesota*, this Court specifically addressed whether individual liability exists under Title I of the ADA, No. 23-cv-3485 (KMM/DTS), 2024 WL 4239253, at *4–5 (D. Minn. Sept. 19, 2024), and concluded that it did not:

> Under the ADA, an employer is "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person." Although individual liability under Title I of the ADA has not been explicitly addressed by the Eighth Circuit, other circuit courts have concluded that the ADA's definition of "employer" precludes individual liability. And several district courts within the Eighth Circuit have concluded that individuals are not liable under Title I of the ADA. Additionally, the Eighth Circuit has ruled that Title II of the ADA, which "provides disabled individuals redress for discrimination by a 'public entity,'" does not permit suits against specific government officials in their individual capacity. In reaching its decision, the . . .

> court cited other circuits' precedent in concluding that "individuals who do not otherwise qualify as 'employers' under the statutory definition are not liable under Title I."

*Id.* at \*5 (quotations and citations omitted).

That conclusion applies straightforwardly here as well. Therefore, the Court concludes that any ADA claim against Ms. Shell individually in this case should be dismissed with prejudice.

### C.    Summary

Accordingly, this action will proceed on claims (1) and (3)–(7) in the list provided in Section I.C.[6] The Court therefore grants the IFP Application and orders service, as detailed below, on Defendants.

One point remains: Mr. Williams-Tolbert's pending request for counsel. *See* ECF No. 3. The Court denies the request without prejudice.

"There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). However, under 28 U.S.C. § 1915(e)(1), a court "may request an attorney to represent any person unable to afford counsel" on a discretionary basis. *Barnes v. Harling*, 368 F. Supp. 3d 573, 610 (W.D.N.Y. 2019) ("A court may appoint counsel within its discretion pursuant to 29 U.S.C. § 1915(e)."). Factors to consider include: "(1) the factual complexity of the issues; (2) the ability of the indigent person to investigate the facts; (3) the existence of conflicting testimony; (4) the ability [of the] indigent

---

[6] The Court stresses that its conclusions during screening under 28 U.S.C. § 1915(e)(2) are without prejudice to Defendants, who, after service and upon filing appearances, may respond to the Complaint in any manner permitted by the Federal Rules of Civil Procedure, including a motion under Rule 12 if they wish.

person to present the claims; and (5) the complexity of the legal arguments." *Crozier for A.C. v. Westside Cmty. Sch. Dist.*, 973 F.3d 882, 889 (8th Cir. 2020).

These considerations do not favor appointment of counsel at this stage. The operative facts here are within Mr. Williams-Tolbert's personal knowledge, and the submitted exhibits suggest that he can gather and present them. The case is at an early stage, before any responsive pleading or discovery, and it is not yet clear that its resolution will involve the sort of conflicting testimony that makes the assistance of counsel in cross-examination important. Nor are the legal questions presently so complex that Mr. Williams-Tolbert cannot proceed without an attorney.

To be clear, however, this dismissal is without prejudice. If, as the case progresses, Mr. Williams-Tolbert believes circumstances have changed such that the Court should reconsider its decision, he is free to file another motion seeking appointment of counsel.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Patrick O. Williams-Tolbert's Employment Discrimination Complaint, ECF No. 1 ("Complaint") is **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915(e)(2), for failure to state a claim, to the extent that it seeks to bring claims under the Americans with Disabilities Act ("ADA") against Defendant Chanel Shell individually.

2. Mr. Williams-Tolbert's Application to Proceed *In Forma Pauperis*, ECF No. 2, is **GRANTED**.

3. Mr. Williams-Tolbert's motion seeking the assistance of counsel, ECF No. 3, is **DENIED** without prejudice.

4. Mr. Williams-Tolbert must submit a properly completed Marshal Service Form (Form USM-285) for each defendant. If he does not complete

and return the Marshal Service Forms within 30 days of the date of this Order, the Court will dismiss this action without prejudice for failure to prosecute. The Court will provide the Marshal Service Forms to Mr. Williams-Tolbert.

5. Upon return of the completed Marshal Service Forms, the Clerk of Court is directed to seek waiver of service from Defendants Laine Homecare LLC and Chanel Shell, consistent with Rule 4(d) of the Federal Rules of Civil Procedure.

6. If Laine Homecare LLC or Chanel Shell fails without good cause to sign and return a waiver within 30 days of the date that the waivers are mailed, the Court will impose upon that defendant any expenses later incurred in effecting service of process. Absent a showing of good cause, reimbursement of the costs of service is mandatory and will be imposed in all cases in which a defendant does not sign and return a waiver-of-service form. *See* Fed. R. Civ. P. 4(d)(2).


Dated: July 17, 2026                          *s/Katherine M. Menendez*
                                              Katherine M. Menendez
                                              United States District Judge

10